THE BANK & TRUST COMPANY OF ARLINGTON HEIGHTS *et al.*, Plaintiffs-Appellants, *v.* P. J. CULLERTON *et al.*, Defendants-Appellees.

(No. 59719;

First District (3rd Division)—January 23, 1975.

Weiner and Spak, of Chicago (Lawrence J. Weiner, John D. Norcross, and Michael Crane, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Paul P. Biebel, and Edna Selan Epstein, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The Bank & Trust Company of Arlington Heights sought a refund of the 1971 personal-property taxes it had paid on shares of its stock, and declaratory and injunctive relief on behalf of itself and other state and national banking associations similarly situated. An amended complaint was dismissed, and the bank was given leave to file a second amended complaint. Instead, it chose to stand on its amended complaint and appealed. Neither an abstract nor excerpts from the record have been filed

as required by Rules 342(b) and 342(e). Ill. Rev. Stat. 1973, ch. 110A, pars. 342(b), 342(e).

The bank's original complaint alleged that the holders of its stock were taxed on the value of their shares in violation of section 76 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 557) and of the 1870 and 1970 Constitutions of Illinois (article IX-A (1870); article IX, section 5(b) (1970)); that P. J. Cullerton, the assessor of Cook County, assessed an ad valorem personal-property tax of $17,358.48 upon these shares and that Bernard J. Korzen, the county collector, demanded payment; that similar assessments and demands were made against other members of the class, and that the bank paid the tax and made repeated requests for a refund which were rejected. The complaint was amended to limit the refund demanded to the taxes assessed upon the shares not held by individuals. This was done to conform to a currently filed supreme court opinion, *Lake Shore Auto Parts Co. v. Korzen* (1973), 54 Ill.2d 237, 296 N.E.2d 342 (*cert. denied,* 414 U.S. 1039), which stated that bank stock was exempt from ad valorem taxation only when owned by a natural person or by two or more natural persons as joint tenants or tenants in common.

The Constitution of 1870, as amended by article IX-A, and the Constitution of 1970 prohibit the taxation by valuation of personal property owned by individuals. Section 76 of the Revenue Act states that shares of bank stock shall not be taxed "at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of this State  *   *   *." (Ill. Rev. Stat. 1973, ch. 120, par. 557.) It is the bank's position that since individual citizens owning bank shares are no longer subject to a personal-property tax, nonindividuals should not be either, and it is therefore entitled to a refund of the 1971 personal-property taxes it paid on behalf of holders of its shares who were not individuals.

The defendants' motion to strike and dismiss asserted, among the other reasons advanced for the dismissal, that the bank was not a proper party to bring the suit inasmuch as it was neither the actual taxpayer nor had it reimbursed the taxpayers. The defendants urge that same point in this court in support of the dismissal and, in addition, contend that no refund will lie to one making a tax payment unless it is paid under protest or duress, and since the amended complaint failed so to plead, it was properly dismissed. The bank filed no brief in reply to this second contention.

■■■ Although the second contention was not presented to the trial court, any point may be relied upon to support a judgment as long as a basis for such a point was before the court. *Shaw v. Lorenz* (1969), 42 Ill.2d 246, 246 N.E.2d 285; *In re Estate of Waitkevich* (1975), 25

Ill.App.3d 513. We will, therefore, consider both of the defendants' contentions.

Section 76 of the Revenue Act requires that "[t]he stockholders of every kind of incorporated bank located within this State * * * shall be assessed and taxed upon the value of their shares of stock therein, in the taxing district where such bank * * * is located * * *." (Ill. Rev. Stat. 1973, ch. 120, par. 557.) Section 77 of the same Act (Ill. Rev. Stat. 1973, ch. 120, par. 558) imposes a duty on banks to keep a complete and correct list of the names and addresses of, and the number of shares held by its stockholders, and to retain dividends belonging to them equal to the tax assessed upon their shares until it appears to the bank or its managing officers or officer that the tax has been paid. Officers who authorize the payment of dividends without withholding funds equal to the assessments are liable for the tax.

■■ It is customary in Illinois for banks to be billed for the personal-property tax on the shares of their stock and for them to pay the tax on behalf of their stockholders. The primary liability for the tax, however, is on the stockholders and not on the bank. (*People v. First National Bank of LaGrange* (1933), 351 Ill. 435, 184 N.E. 645; *Chicago Title & Trust Co. v. Central Trust Co. of Illinois* (1924), 312 Ill. 396, 144 N.E. 165.) A collector of taxes cannot maintain an action against a bank or its officers for the tax unless there has been a failure to comply with section 77. The collector's right to maintain such an action is predicated upon dividends having been authorized by the bank's board of directors and paid under the officers' direction without the tax assessed against the shareholders having been paid. *People ex rel. County Collector v. First National Bank* (1965), 33 Ill.2d 457, 211 N.E.2d 713.

In *Lincoln National Bank v. P. J. Cullerton* (1974), 18 Ill.App.3d 953, 310 N.E.2d 845, two banks sought refunds on behalf of themselves and all other banks similarly situated of 1971 personal-property taxes they had paid on capital stock owned by their shareholders. They alleged that pursuant to longstanding custom, the assessor and collector of Cook County billed them for personal-property taxes on the value of the outstanding shares of stock owned by their shareholders; they paid these taxes from their general funds; they did not withhold dividends for the payments of the taxes and they were not reimbursed for the payments by their shareholders but, despite demand, the county treasurer refused to refund the amount paid. A motion to dismiss was filed by the defendants which asserted that the banks were not the actual taxpayers and, therefore, were not liable for the taxes. The trial court dismissed the complaint on the grounds that natural persons are the only taxpayers entitled to

refunds of personal-property taxes and that the banks had paid the taxes as volunteers without legal obligation to do so. On appeal this court affirmed. Although the *Lincoln National Bank* case differs from the present one in two respects (the banks sought refunds of taxes on stock owned by individuals and the payments were made within the purview of section 195.01 of the Revenue Act, Ill. Rev. Stat. 1973, ch. 120, par. 676.01) the basic refund issue is substantially the same. Both the plaintiff and the defendants agreed that a refund should be made. They disagreed only as to the identity of the parties who should receive the refund. The question before the court, as in this case, was whether the county officials were obliged to make the refund to the banks who paid the taxes or to the actual owners of the property assessed. The court held that a refund to the bank would be grossly inequitable. Because of this ruling the court concluded that it was unnecessary to consider the second ground given by the trial court for the dismissal: the voluntary nature of the payments.

An apparently contrary view was expressed by this court in *Kimball v. Corn Exchange National Bank* (1878), 1 Ill.App. 209. Kimball was the tax collector of the town of South Chicago. The Corn Exchange Bank sought to recover from him one-sixth of the taxes levied upon its capital stock for the year 1877. The appellate court held that this portion of the levied tax was collected without authority of law. However, it was held that the suit should have been brought in law not in equity; the trial court was reversed and the equity action was dismissed. While unnecessary to its decision, the court observed that the bank had the power to retain from dividends due its stockholders an amount sufficient to pay taxes legally levied upon their shares; that payments beyond the legally levied taxes were "made in its own wrong" and would be no defense to the demands of its stockholders for their dividends, and that the stockholders could not be charged for monies paid for an illegal tax. The court then stated: "This money being paid by the bank of its own wrong, must be held to be money paid out of the proper funds of the bank and not out of funds of its stockholders, and consequently, while in the hands of the collector it is the property of the bank, and it alone can bring suit to recover it back." 1 Ill.App. 209, 217.

The plaintiff has seized upon the words "it alone can bring suit to recover it back" and asserts that the *Kimball* case is determinative of the present one. We do not read the *Kimball* decision in this fashion. First, the statement was merely incidental to the court's determination of the cause. Second, in stating that the bank alone could recover the money paid to the collector, the court was referring to money erroneously paid by the bank. The court used the phrase "its own wrong" twice in its

opinion and by it meant that portion of the tax which was illegally assessed and which the bank should not have paid. The case of *Kimball v. Merchants' Savings, Loan & Trust Co.* (1878), 89 Ill. 611, cited by the plaintiff as affirming *Kimball v. Corn Exchange National Bank,* is a connected case dealing with the same personal-property tax but with a different party who wanted an injunction against that part of the tax which had not yet been collected.

■■ The custom that prevails for banks to be billed and to pay personal-property taxes for its shareholders has been developed for the convenience of both banks and collectors. It enables a collector to obtain tax payments surely, quickly and from one source. It enables a bank to disburse dividends to its shareholders without exposing its managing officers to the contingent liability imposed by statute in the event shareholders do not pay the taxes themselves. A bank has the duty to retain as much of the dividends as necessary to pay any taxes levied upon its shares until it appears that the taxes have been paid; it has no other statutory duty. The money the Arlington Heights Bank paid to the county collector of Cook County was not the bank's money but its shareholders and, therefore, the bank had no right to recover the money for its shareholders and had no standing to bring this action for a refund.

Even if the plaintiff bank had a theoretical right to a refund for the taxes paid on the stock owned by its nonindividual shareholders, it could not recover. To be entitled to a refund the bank would have had to pay the taxes under protest or duress. It did neither and its complaint alleged neither. The only allegation that might suggest duress was the one that demands had been made upon it for payment of the taxes. But this allegation, even under the motion to strike and dismiss which admitted all facts well pleaded, did not support the theory of legal duress.

■■ In the absence of statutory provision, taxing authorities have no power to refund illegal taxes not paid under duress. (*Snyderman v. Isaacs* (1964), 31 Ill.2d 192, 201 N.E.2d 106; *People ex rel. Sweitzer v. Orrington Co.* (1935), 360 Ill. 289, 195 N.E. 642.) For a payment of taxes to be deemed under duress there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting the payment over the person or property of the party making the payment, from which the latter has no reasonable means of immediate relief except by making the payment. (72 Am. Jur. 2d, *State and Local Taxation* § 1081 (1974).) To render a payment compulsory such pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, and the compulsion must furnish the motive for the payment sought to be avoided. (*School of Domestic Arts & Science v. Harding* (1928), 331 Ill. 330, 163 N.E. 15.)

The bank did not allege that it tried to avoid paying the tax assessed on its shares or state any reasons why it had no choice except to pay the tax. In fact, it acknowledged that only "secondary liability is imposed against Banks by statute in the event the shareholders do not pay the tax." In the absence of essential factual allegations the complaint was properly stricken.

There is a third reason for sustaining the order of the trial court: the plaintiff's failure to file an abstract or excerpts from the record. This failure would warrant the dismissal of the appeal. *Frederick Chusid & Company v. Collins Tuttle & Co.* (1973), 10 Ill.App.3d 818, 295 N.E. 2d 74; *Denenberg v. Prudence Mutual Casualty Co.* (1970), 120 Ill.App. 2d 68, 256 N.E.2d 71.

The plaintiff did not argue on appeal the question of its rights independent of its right to a refund. A point not argued is waived. Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7).

The order striking and dismissing the plaintiff's complaint is affirmed.

Affirmed.

McNAMARA and GOLDBERG, JJ., concur.